IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MCI COMMUNICATION SERVICES, INC.,

    Plaintiff,

vs.                                           CASE NO. 5:09cv337/RS-AK

MURPHREE BRIDGE CORPORATION,

    Defendant.
_____/

## ORDER

Before me is Defendant's motion for summary judgment (Doc. 30).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). "'All reasonable doubts about the facts should be resolved in favor of the non-movant.'" *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

On March 20, 2008, while in the process of repairing a wooden railroad bridge in Chattahoochee, Florida, Defendant severed a fiber-optic cable that belonged to Plaintiff. A little more than one hour after the cable was broken, a representative of Plaintiff arrived at the job site, located the severed cable, and began repair efforts.

The telecommunications system affected by the severance of the fiber-optic cable included both "linear" and "redundant" telecommunication systems. A redundant telecommunications system allows for any traffic carried on the system to be automatically rerouted through spare cables in the same provider's network should a cable be severed. The only interruption in service is 50 milliseconds. However, when the redundant traffic is switched to the spare cables on the network, this leaves the network with no additional spare capacity should another line be damaged before first damaged line is repaired. A linear system has no redundant capabilities, and therefore any traffic being carried on this system when a disruption occurs is said to have gone "down hard."

In the instant case, there were thirty-six systems being carried on the cable when Defendant severed it. Eight of these systems were redundant and automatically rerouted through Plaintiff's other systems. Twenty-eight were linear and therefore service was completely lost for 5.67 hours, until Plaintiff was able to reroute that traffic through a separate cable owned and operated by Qwest Communications. Plaintiff was able to complete temporary repair and restore the severed cable to service after 11.75 hours.

Plaintiff sued Defendant on two counts: trespass and negligence. Plaintiff seeks damages for repair of the cable and loss of use of the cable. The "loss-of-use" damages requested by Plaintiff are based on the rental replacement value for

the twenty-eight systems that lost service during the 5.67 hours it took Plaintiff to repair the cable and restore traffic. Defendant now seeks partial summary judgment on Plaintiff's claims for "loss-of-use" damages.

### III. ANALYSIS

In answering a certified question from the Eleventh Circuit, the Florida Supreme Court held that loss-of-use damages based on rental replacement value are not the appropriate measure of damages when there were no such costs incurred. *MCI v. Mastec,* 544 F.3d 1200, 1201 (11th Cir. 2008), quoting *MCI v. Mastec*, 995 So.2d 221 (Fla. 2008). The Florida Supreme Court answered in the negative the following question:

> Is a telecommunications services carrier entitled to loss of use damages measured by the cost of renting a replacement for a fiber-optic cable damaged by a defendant when the carrier was able to accommodate within its own network the telecommunications traffic carried by the damaged cable and the carrier presented no evidence that it rented replacement cable or suffered any loss of revenue or other damages during the time the cable was unavailable?

Here, as in *Mastec,* Plaintiff did not actually pay for the rental of replacement cable, nor did it suffer any loss of revenue. Plaintiff does not claim that it was charged by Qwest for the temporary use of its cable, nor does Plaintiff cite any other expenses incurred in temporarily restoring service through its own redundant network and Qwest's network. Although Plaintiff states that it received complaints from customers about lost service, Plaintiff makes no claim that the

disruption in service led to any damages such as loss of income or loss of customers.

Plaintiff argues that *Mastec* is distinguishable because in that case MCI was able to accommodate within its own network the traffic from the damaged cable. However, this distinction makes little difference since in the instant case Plaintiff still suffered no loss of revenue, despite not being able to accommodate the traffic within its own network. Furthermore, compensatory damages are designed to make the injured party whole, to the extent that it is possible to measure such injury in monetary terms. *MCI v. Mastec*, 995 So. 2d 221, 223 (Fla. 2008). A plaintiff is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant. *Id.* Here, as in *Mastec,* any damages to Plaintiff based on rental replacement are purely theoretical, and because Plaintiff did not actually pay for a rental replacement, damages for loss of use measured by the rental replacement vale would result in a windfall to Plaintiff.

## IV. CONCLUSION

To award loss-of-use damages for rental of replacement cable when there has been no rental would go against the long-held principle of awarding damages in an amount equal to the loss sustained. Accordingly, partial summary judgment is entered in favor of Defendant on Plaintiff's claim for loss of use damages.

Plaintiff states that it is not seeking punitive damages; therefore, summary judgment is also entered in favor of Defendant on the issue of punitive damages.

**ORDERED** on April 16, 2010

                                        **/s/ Richard Smoak**
                                        **RICHARD SMOAK**
                                        **UNITED STATES DISTRICT JUDGE**